Mr. Justice Olin
delivered the opinion of the court:
This cause comes before us on appeal from the decree of Justice Wylie, holding the special term.
The facts in the case are substantially as follows:
On the 10th of April, 1874, the plaintiff (complainant) filed a bill in equity, alleging that, about the 15th of July, 1873, he agreed to purchase certain real property from the defendant in-squ'are 4 of the city of Washington, for the exact sum of $20,000, the property being encumbered at the time of purchase by a debt of $8,000, and no more; that the payments were to be $2,000 in cash, $10,000 on the 1st day of January, 1874, $8,000 to discharge a mortgage on the premises held by one Henry North; but that after the purchase he found the claim of North to be more than $8,000 by reason of interest having accumulated therein to the aggregate amount of $1,300; the prayer of the bill is that the said sum of $1,300 be deducted from the amount yet remaining unpaid on complainant’s note given to the defendant, and for an injunction preventing the negotiation of said note, and for a decree’ for $1,300 in case the note had already been negotiated.
*7 On tlie 25th of May, 1874, the defendant filed his answer admitting that the purchase was as alleged in complainant’s bill, but he denies that the purchase-money price was limited to the precise sum of §20,000, or that the property was encumbered by any amount particularly limited to §8,000, and no more.
W. denies, however, that there was any mistake whatever in the premises as to complainant’s liability on the North notes he owes; that the agent, Wilson, who negotiated the purchase of this property, knew, and was expressly informed, when the deeds were prepared, that those notes bore interest.
The bill in this case seems to have been drawn with something like a double aspect. First, that the papers as executed, made between the parties at the time, did not truly express the parol agreement made between the parties at the time of the then execution ; or, second, that the papers actually executed, if properly construed, only required the complainant to pay the precise sum of §20,000, the purchase-price expressed iu the deed, as the consideration for the conveyance. It was ihe latter point, doubtless, upon which the justice proceeded in entering the decree which is appealed from to this court. That decree in substance orders that the interest which had accrued on the North notes at the time of the purchase of this property, or rather at the time of the execution of the deed of conveyance, be deducted from the purchase-price of the property, so that in any event Sawyer, the complainant, would not be obliged to pay more than $20,000 for the property, hut upon whichever ground this decree was placed, I think it was erroneous. In reference to the first ground, it will he observed that there is no averment in the bill of any trick, fraud, or contrivance by reason of which Sawyer, complainant, was induced to execute under his hand and seal the pax>ers introduced iu evidence in this note, much less is there any proof in support of such averment had it been made. No principle of law, iu courts of equity as well as in courts of common law, is better settled than that all negotiations by parol, prior to the execution of a written contract, are merged in such contract, and most especially in a contract under seal, and that a party will be estopped from *8 proving such was not the contract between the parties, unless the party alleges that his signature was procured by fraud, imposition, or other dishonest practices. To allow a deed or other instrument, evidenced in the most solemn manner any written agreement can be, to be set aside and overthrown by the loose recollection of a treacherous memory of conversations that preceded the execution of it, would subvert a well-established principle of law, and render such parol testimony of equal force with the most solemn written document. But if we turn to the testimony in this case, I think it is equally clear that the deed of conveyance was executed in precise accordance with the parol terms of negotiation which preceded it.
It is true that the witness makes an ex-parte affidavit to be used on motion for an injunction in this case, which, if considered in and of itself alone, would tend to show that the terms of sale were only $20,000, and that nothing was said upon the subject of back interest on the North notes. This ex-parte affidavit, by a stipulation of counsel, was made a part of the evidence in the case. But Wilson was called before the examiner and subjected to the test of a cross-examination 5 on that examination he says that, after he, Wilson, had told Sawyer the property in question was cheap, Wilson was told to call'on Weaver and ascertain upon what terms the latter would sell the property. Wilson sees Weaver in pursuance of* this agreement, and, as he testifies, Weaver told him that there were eight notes, payable annually, bearing seven per cent, interest; that if Mr. Sawyer would give him $12,000 and talce care of the North notes he could have the building, and the $12,000 he could pay to suit himself; that he reported this conversation to Mr. Sawyer; “Mr. Sawyer then told me to let Mr. Weaver have the papers drawn up, and he would pay him $2,000 in cash, and the balance in two payments of $5,000 each, three and six months, with interest, at the rate of the North notes.” This testimony, together with the ex-parte affidavit of Wilson before alluded to, and the amount of the consideration named in the deed, $20,000, is all the legal testimony on the trial of the cause tending to show what was the consideration agreed to be paid prior to the execution of the deed. The consideration expressed in a *9 deed is but slight evidence of the true consideration. The consideration of a deed should be expressed to be such as will support a deed of bargain and sale, and for that purpose $5 is as good as $50,000; both are open in courts of law, as well as in equity, to explanation or even contradiction. Samuel Phillips, the attorney and counsel, who was employed to draw up the deed of conveyance from Weaver to Sawyer, testifies that Wilson, acting on behalf of Sawyer in negotiating the purchase of this property, was, with Weaver, present at his office when the deed was drawn, and that the subject of interest on the North notes was particularly mentioned, as it was the express understanding between Wilson and Weaver that the said Sawyer was to assume the payment of the interest as well as the principal, and to hold the said Weaver harmless from all obligation on said notes. How exactly, this testimony corresponds with that of Wilson, and with the covenant in the deed executed by Sawyer, it would seem to be needless to inquire.
I conclude, therefore, that the learned justice did not pass this decree on the ground that any such fraud or mistake nad been practiced or made as would justify a court of equity in setting aside an agreement under seal. Onthesecondground, the simple question is as to the true intent and meaning of the papers executed by the respective parties.
The deed of conveyance of this property executed by Weaver and wife to the complainant Sawyer contains, among other things, this recital, “ it being understood that Harvey North holds eight promissory notes of said Oastleman and Weaver, each for the sum of one thousand dollars, secured by a deed of trust on said property, recorded in liber 640, folio 474, and the said party of the second part hereby assumes the payment of the same as part of the consideration of this deed, and will hold the said Weaver harmless from all obligations thereon.”
If the language of this covenant, as interpreted by the absurd rule of the common law long since exploded, that requires the words of a deed to be interpreted most strongly against the grantor, be applied in this case, I still think this covenant bound Sawyer to pay and satisfy the notes held by North, together with all interest that had accrued, or might thereafter accrue, thereon. How else could he save Weaver *10 harmless from the consequences of having signed these notes. At the time of the execution of the deed of conveyance of this property to Sawyer, the latter executes what is usually termed a deed of trust to secure deferred payments, which contains-the following recital or covenant. “And whereas thereis now an indebtedness on such property of eight promissory notes of S. D. Castlemau and Weaver, each for one thousand dollars, with interest, as will appear by deed recorded in liber No. 643, folio 474, and part of the consideration of this sale is that the said Sawyer shall assume such indebtedness, and pay the same, and hold the said, Weaver harmless therefromP
I think it quite unnecessary to apply the same rule of construction before alluded to to interpret an instrument of this kind. On tbe other hand, the plain and obvious meaning of the language to an ordinary understanding is that there was an incumbrance on the property conveyed of eight promissory notes for one thousand dollars each, with interest, and reference is made to the book and page where this incumbrance is recorded; thus we see that by the deed of conveyance of “Weaver to Sawyer, and also in the mortgage or deed of trust given by Sawyer to Weaver to secure deferred payments of the purchase-price of the property, there is a covenant on the part of Sawyer to pay the North notes and save Weaver harmless from having signed the same. How, I again repeat, could Sawyer save Weaver harmless from the consequence of signing the North notes, if he did not pay the interest which had accrued as well as to accrue? Weaver was as legally bound to pay the back interest on the North notes as he was to pay the principal.
The decree in this case should be reversed, the bill dismissed, and the complainant pay the costs of this suit.